UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN CROW, et al.,

Plaintiffs,

v.

COSMO SPECIALTY FIBERS, INC., et al.,

Defendants.

CASE NO. 3:15-cv-05665-RJB

ORDER ON DEFENDANT COSMO SPECIALTY FIBERS, INC.'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant Cosmo Specialty Fibers, Inc.'s Motion for Summary Judgment. Dkt. 78. The Court has considered Cosmo's motion, Defendants Trans-Systems, Inc.'s and James J. Williams Bulk Service Transport's (TSI-JJW's) Response (Dkt. 90), Plaintiff's Response (Dkt. 84), Cosmo's Reply (Dkt. 95), and the remainder of the file herein.

Cosmo's motion seeks summary judgment of dismissal. According to Cosmo: (1) dismissal of the negligence claim is warranted, because there is no evidence that Cosmo caused Plaintiffs' harm; (2) dismissal of the negligent hiring, training, and supervising allegations is

warranted, because the requisite negligence claim fails and there is no evidence that any Cosmo employees acted outside of the scope of their employment; and (3) dismissal of the strict liability allegations is warranted because Cosmo at most stored (but did not transport) aqua ammonia, which is not an abnormally dangerous activity.

## FACTUAL BACKGROUND

The case arises out of alleged injuries to Plaintiff Steven Crow from an exposure incident, where he was allegedly exposed to hazardous fumes or gas released on September 27, 2012. On that date, Mr. Crow and three fellow Weyerhauser coworkers worked at the Weyerhauser Truck Shop, which is adjacent to a pulp mill operated by Cosmo. Dkt. 57 at 7. According to Cosmo's records, a tanker truck operated by TSI-JJW entered the pulp mill at 12:10pm and departed at 1:46pm. Dkt. 59 at 9. The delivery log sheet of the tanker truck driver, Devin Godwin, indicates that aqua ammonia was delivered to Cosmo's pulp mill storage tanks ("the delivery site") between 12:20pm and 1:20pm. Dkt. 41-1 at 21.

Mr. Godwin testified about the aqua ammonia delivery on the date of the exposure incident. Mr. Godwin offloaded aqua ammonia at the delivery site and, consistent with Cosmo's written procedures, began to vent excess vapor pressure through Cosmo's scrubber. When the pressure lowered to 5 psi, he was unable to vent the remaining pressure through the scrubber. Dkt. 79 at 21, 22, 25, 26, 29 (Godwin Dep. at 22, 23, 26, 27, 30). An unidentified Cosmo employee informed Mr. Godwin that Cosmo's scrubber was broken down. *Id*. at 22 (Godwin Dep. at 23). Thereafter, "[t]hey told [Mr. Godwin] that [he] could release the last five pounds out where [he] was parked at into the atmosphere." *Id*. at 28 (Godwin Dep. at 29). Mr. Godwin could not later identify the person who gave him permission to vent, other than to refer to the person as a "Cosmo environmentalist." *Id*. at 26, 28 (Godwin Dep. at 27, 29).

After receiving permission from Cosmo to vent, “that’s when [Mr. Godwin] got in the truck and drove through . . . Cosmo’s facility with [his] vent open to that secluded spot.” Dkt. 65 at 21 (Godwin Dep. at 61). Mr. Godwin testified that he drove from the delivery site to a “secluded location” for the first time on the date of the exposure incident. Dkt. 79 at 39 (Godwin Dep. at 66). He subsequently vented at the secluded location on multiple occasions. *Id*. at 46 (Godwin Dep. at 76). Mr. Godwin testified that did not “contact the environmental operator at Cosmo or anyone else at Cosmo to see if that was okay to do.” *Id*. at 39 (Godwin Dep. at 66). He further explained:

Q: No one at Cosmo told you it was allowed to drive with your vents open to some remote area on their property to further vent pressure?

A: Yes.

Q: You made that decision on your own?

A: Yeah.

Q: You didn’t call Jerrod [a TSI-JJW employee] for advice on that?

A: I didn’t.

*Id*. at 33 (Godwin Dep. at 41). Mr. Godwin believed that there was “very little [aqua ammonia] that was coming out when I drove . . . from the offloading spot to that secluded area.” Dkt. 65 at 21 (Godwin Dep. at 61).

Mr. Godwin marked with an “X” the secluded spot on a map provided at his deposition. Dkt. 79 at 34, 35 (Godwin Dep. at 42, 43), 51, 52. To reach the secluded spot, Mr. Godwin departed from the delivery site and drove within approximately 300 feet of the exposure site, a distance that Cosmo concedes for purposes of this motion could be close enough to create risk of exposure venting. Dkt. 95 at 2. *See* Dkt. 81 at ¶¶16, 17. The delivery site is located approximately 1100 feet from the exposure site, a distance that Cosmo maintains is too far to

create risk of exposure from venting. Cosmo denies giving Mr. Godwin permission to vent anywhere—either at the delivery site or the secluded location, because allowing any venting would not comport with Cosmo's written policy. Dkt. 80 at ¶12; Dkt. 81 at ¶14.

Before the exposure incident, Cosmo received multiple "neighborhood concern" written complaint forms that described "chemical smells," "black smoke," and other similar air quality descriptions, allegedly causing symptoms such as shortness of breath, coughing, choking, and nausea. Dkt. 91-1 at 2-51. Cosmo has also acknowledged problems with sensor equipment. *Id*. at 86-88.

Plaintiffs' medical expert, Jordan Firestone, has concluded "on a more probable than not basis that there is a causal relationship between Mr. Crow's medical conditions and exposure to the ammonia gas on the [*sic*] September 27, 2012." Dkt. 64 at 19.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, discovery, affidavits, and any other materials on file show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

**A. Prima facie case of negligence.**

To defeat summary judgment of a negligence claim, the plaintiff must make a prima facie showing of "the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Lynn v. Labor Ready, Inc.*, 136 Wn. App. 295, 306 (Div. II 2006); *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn. 2d 265, 275 (1999). For purposes of this motion Cosmo concedes all elements but proximate cause. Dkt. 95 at 2.

Proximate cause "consists of two elements: cause-in-fact and legal causation." *Lynn*, 136 Wn. App. at 307, citing *Hartley v. State*, 103 Wn. 2d 768, 777 (1985). Cause in fact "refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Hartley*, 103 Wn.2d at 778. "Cause in fact is generally left to the jury . . . [and] questions of fact are not appropriately determined on summary judgment unless but one reasonable conclusion is possible." *Id*. Legal causation requires consideration of how far liability should extend, in light of "mixed considerations of logic, common sense, justice, policy, and precedent. *Id*. (quoting

*King v. Seattle*, 84 Wn.2d 239, 250 (1974), overruled on other grounds) (internal quotations omitted).

For purposes of its motion, Cosmo assumes an otherwise disputed fact, that an unidentified Cosmo employee gave the truck driver, Mr. Godwin, permission to vent remaining pressure into the atmosphere "while parked" at the aqua ammonia delivery site. Even under that assumption, Cosmo argues, Plaintiffs "cannot establish that Cosmo allowing [Mr. Godwin] to vent fumes at the bioponds [adjacent to the delivery site] was the proximate cause of Crow's alleged harm," because the delivery site was over 1,100 feet from the site of the exposure incident, and "Crow would not have experienced harm if the [TSI-JJW] truck had stayed stationary[.]" Dkt. 78 at 8, 9. Cosmo further opines that there is no evidence in the record to support an injury from exposure at such a distance.

If the facts are construed in Cosmo's favor, Cosmo could have a persuasive argument. Mr. Godwin states that "they told [him] that [he] could release the last five pounds out <u>where I was parked at</u> into the atmosphere," Dkt. 79 at 28 (Godwin Dep. at 29), which could be read to impliedly limit Cosmo's permission for Mr. Godwin to vent at the delivery site only. Mr. Godwin later admits that he "never told Cosmo at any time [that he was] venting in this secluded location," *id*. at 46 (Godwin Dep. at 76), and "[n]o one at Cosmo told [him that he] was allowed to drive with [his] vents open to some remote area on their property to further vent pressure." *Id*. at 33 (Godwin Dep. at 41).

Nonetheless, Cosmo acknowledges that once the truck was moved from the delivery site, when Mr. Godwin "drove while venting within 300 feet . . . of [Plaintiff] Crow's location," Dkt. 78 at 5, such a distance would be close enough to cause harm. Dkt. 95 at 2. According to Cosmo, "it was a common practice of [Mr. Godwin] to drive across the Cosmo facility while venting

ammonia fumes to a more secluded area." Dkt. 78 at 11. *See also*, Dkt. 79 at 46 (Godwin Dep. at 76). Construing these two facts in Plaintiffs' favor, a reasonable trier of fact could conclude that Cosmo gave TSI-JJW instruction or permission to vent into the atmosphere *generally*, without limitation to the delivery site. Under this theory, the phrase "where I was parked" could refer to the location where Plaintiff Crow received permission to vent, rather than a geographic limitation on said permission. It could then follow that Mr. Godwin acted consistent with the scope of Cosmo's permission while venting at the delivery site, at the secluded area, and en route thereto. With issues of fact surrounding exactly what Cosmo employees may have communicated to Mr. Godwin, e.g., the scope of permission granted him to vent into the atmosphere, summary judgment in favor of Cosmo is not warranted.

Because summary judgment can be denied under the above theory, the Court need not reach the issue of whether other evidence creates an issue of material of fact as to whether Cosmo was a direct source of harm, e.g., in consideration of malfunctioning sensor equipment or air quality complaints by Cosmo's community neighbors.

Because there are genuine issues of material fact as to each element of Plaintiffs' negligence claim, Cosmo's motion for summary judgment of the negligence claim should be denied.

**B. Allegations of negligent hiring, retention, and supervision.**

Cosmo argues that "no evidence" exists to support allegations of negligent hiring, retention, and supervision. Dkt. 78 at 14, 15. The Court concurs. Further, Plaintiff does not oppose this portion of Cosmo's motion. Dkt. 84 at 2. The Court previously struck these allegations as to TSI-JJW (Dkt. 75) and should now do the same as to Cosmo. To this extent, Cosmo's motion should be granted.

**C. Allegations of ultra-hazardous activity and strict liability.**

Cosmo argues that the strict liability standard for ultra-hazardous activities does not apply as a matter of law, because Cosmo only stored and used aqua ammonia, but did not transport it, unlike TSI-JJW. Applying the six-factor 2nd Restatement test, Cosmo argues, shows that storage and use of ammonia is not an ultra-hazardous activity. Dkt. 78 at 22, 23.

On the record before the Court, summary judgment in favor is Cosmo is not warranted. Because the record provides only limited, general information about Cosmo's use and storage of aqua ammonia, the Court has insufficient information to make a legal determination. Based on the current record, a finding for Cosmo would, in essence, be a finding that the use and storage of aqua ammonia is *never* an ultra-hazardous activity *as a matter of law*. The Court is not aware of any binding authority for this proposition. Instead, even a cursory review of cases cited by the parties shows that the legal determination of "ultra-hazardous activity" is fact-specific inquiry. Without more facts, this determination is premature.

Therefore, as to Cosmo's request that the Court make a legal determination that Cosmo did not engage in ultra-hazardous activity, Cosmo's motion should be denied without prejudice.

* * *

THEREFORE, Defendant Cosmo Specialty Fibers, Inc.'s Motion for Summary Judgment (Dkt. 78) is GRANTED IN PART and DENIED IN PART as follows:

(1) Dismissal of negligence claim: DENIED.

(2) Dismissal of negligent hiring, training, and supervising allegations: GRANTED.

(3) Dismissal of ultra-hazardous activity and strict liability allegations: DENIED without prejudice.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 22nd day of March, 2017.

ROBERT J. BRYAN
United States District Judge