UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN CROW and CHERYL CROW, and CHERYL CROW on behalf of and as parent and guardian to J.M.C., J.J.C., and G.E.C.,<br><br>Plaintiffs,<br><br>v.<br><br>COSMO SPECIALTY FIBERS, INC.; TRANS-SYSTEM, INC. d/b/a JAMES J. WILLIAMS BULK SERVICE TRANSPORT; AIRGAS SPECIALTY PRODUCTS, INC.; JOHN DOE and JANE DOE; JOHN DOE TWO COMPANY,<br><br>Defendants. | CASE NO. 3:15-cv-05665-RJB<br><br>ORDER ON DEFENDANTS TRANS-SYSTEM, INC. D/B/A JAMES J. WILLIAMS BULK SERVICE TRANSPORT'S MOTION FOR SPOLIATION SANCTIONS |

THIS MATTER comes before the Court on Defendants Trans-system, Inc. d/b/a James J. Williams Bulk Services Transport's (TSI-JJW's) Motion for Spoliation Sanctions. Dkt. 82. The Court has considered the motion, Defendant Cosmo Specialty Fibers, Inc.'s Response (Dkt. 87), Plaintiffs' Response (Dkt. 94), TSI-JJW's Reply (Dkt. 96), and the remainder of the file herein.

ORDER ON DEFENDANTS TRANS-SYSTEM,
INC. D/B/A JAMES J. WILLIAMS BULK
SERVICE TRANSPORT'S MOTION FOR
SPOLIATION SANCTIONS- 1

1  TSI-JJW's motion presents the issue of whether Cosmo should be sanctioned for its
2 failure to retain or produce an email. For the reasons discussed herein, sanctions are not
3 warranted, and TSI-JJW's motion should be denied.

4 <div align="center">BACKGROUND</div>

5  **A. Underlying case.**

6  This case arises out of alleged injuries to Plaintiff Steven Crow from an exposure
7 incident, where he was allegedly exposed to hazardous fumes or gas released on the afternoon of
8 September 27, 2012. The precise timing of the incident is disputed by the parties. On that date,
9 Mr. Crow and three fellow Weyerhauser coworkers worked at the Weyerhauser Truck Shop,
10 which is adjacent to a pulp mill operated by Cosmo. According to Cosmo's records, a tanker
11 truck operated by TSI-JJW entered the pulp mill at 12:10pm and departed at 1:46pm. The
12 delivery log sheet of the tanker truck driver, Devin Godwin, indicates that he delivered aqua
13 ammonia to Cosmo between 12:20pm and 1:20pm.

14  After offloading the aqua ammonia, Mr. Godwin has testified, he vented remaining vapor
15 pressure into the atmosphere. While venting, Mr. Godwin drove from the delivery site, which is
16 1,100 feet from the exposure site, to a secluded location on Cosmo property, wherein he drove
17 within 300 feet of the exposure site, a distance that arguably increased the risk of exposure from
18 venting.

19  At 3:17pm, Weyerhauser employee, Karen Temen, sent an email to Cosmo employees
20 Donna Parsons and Jeffrey Hanoff. (Cosmo's disclosure of this email is at the center of TSI-
21 JJW's motion.) The September 27, 2012, 3:17pm email from Ms. Temen stated the following:

22  Subject: let's meet again

23  It's been awhile [*sic*] and I'm receiving some complaints today from our employees. Not sure if the wind shifted or it's hot out or??

24

> Can you all meet on October 8th [*sic*] time is flexible at this point depending on your schedules.

Dkt. 83-1 at 23.

An internal Weyerhauser Investigation Report narrates that "[o]n Thursday 9/27/12 at ~1500hrs 4 WY [Weyerhauser] employees were exposed to unknown gas release from adjacent Cosmo pulp mill," and that "WY [Weyerhauser] liaison contacted the safety coordinator for the pulp mill at ~1515hrs." Dkt. 83-1 at 7.

**B. Pre-filing communications and exchange of discovery.**

Prior to the filing of this case, in a letter from Plaintiffs' counsel to Cosmo, dated March 19, 2013, Plaintiffs' counsel "enclosed" the Weyerhaeuser Investigation Report "for your review and file." Cosmo's counsel, in a letter to AirGas, dated August 29, 2013, references the same report and notes that "affected employees began to register complaints at approximately 3 p.m. . . and shortly thereafter Weyerhaeuser notified [Cosmo] plant safety officer." Dkt. 83-1 at 12. The letter also refers to Cosmo's internal investigation, which "has been able to confirm that at approximately 2 p.m. that afternoon . . . [there was] a delivery of ammonia" by TSI-JJW that was the source of the Mr. Crow's exposure. *Id*.

Following the filing of this case, on August 1, 2016, TSI-JJW served on Cosmo the following discovery request:

> REQUEST FOR PRODUCTION NO. 7: Please produce any and all emails . . . in any way associated with Weyerhaeuser Company's meetings with and/or site visits to the Cosmo . . . facility following the September 27, 2012 incident.

Dkt. 83-1 at 16, 17. On September 2, 2016, Cosmo responded with general objections, but also produced over 50 pages of responsive discovery. *Id*. The initial disclosure did not include the

ORDER ON DEFENDANTS TRANS-SYSTEM,
INC. D/B/A JAMES J. WILLIAMS BULK
SERVICE TRANSPORT'S MOTION FOR
SPOLIATION SANCTIONS- 3

September 27, 2012, 3:17pm email at issue, but it did include an email chain dated September 28, 2012, wherein Ms. Temen (Weyerhaeuser) forwarded to Ms. Parsons and Mr. Hanoff (Cosmo) an internal Weyerhaeuser email, also dated September 28, 2012, that references the exposure incident. Dkts. 83 ¶4; 83-1 at 2. Cosmo later supplemented its initial disclosure on November 14, 2016, with 45 additional pages of discovery. *Id*. at 21.

To respond to TSI-JJW's August 1, 2016, discovery request, Cosmo's counsel instructed the Cosmo IT Manager to undertake a key word search of Cosmo's email archives for specific Cosmo employees, including Ms. Parsons and Mr. Hanoff, during a specified date range. Dkt. 89 at ¶¶2, 3. Cosmo produced all responsive discovery based on those search terms, which did not include the September 27, 2012, 3:17pm email. *Id*. None of the key words, such as "ammonia" or "scrubber" can be found in the September 27, 2012, 3:17pm email, with the exception of a date, "9-27-12." Nonetheless, Cosmo acknowledges, the results of the key word search should have included the email at issue, Cosmo's IT Manager states, were it not for "hard drive and/or database corruption." *Id*.

As recently as the week before Cosmo filed its response to this motion, Cosmo's IT Manager conducted a search for "Temen" and "Weyerhaeuser" but did not locate the email in question. On March 9, 2017, Cosmo's IT Manager again searched for the email but expanded his search to include Ms. Parson's archived "user profile," at which point he found the email. *Id*. at ¶¶4-6. He "did not realize this type of email information was present there." *Id*.

Beyond TSI-JJW's request for production to Cosmo, TSI-JJW conducted other discovery, including the deposition of Ms. Temen. On October 13, 2016, TSI-JJW's counsel asked Ms. Temen about specific content in the Weyerhaeuser Investigation Report:

> Q: "Weyerhaeuser liaison contacted the safety coordinator for the pulp mill at approximately 15:15 hours." That's you contacting Donna [Parsons]?


1      A: I guess so, yes.

2      Q: Okay. And your approximate time for contacting Donna [Parsons] is 3:15?

3      A: Yes.

4  Dkt. 88 at 34. *See also*, Dkt. 88 at 28 (Dep. of Kandi Johnson).

5      TSI-JJW served a third party subpoena on Weyerhaeuser, which produced the September 27, 2012, 3:17pm email on February 17, 2017. The email was not produced by Weyerhaeuser in discovery produced in May 2016 in response to a third party subpoena served by Cosmo. Dkt. 88 at ¶¶7, 10.

## DISCUSSION

**A. Spoliation?**

TSI-JJW brings this motion in pursuit of "spoliation sanctions." Dkt. 82 at 1. It is not clear what legal authority TSI-JJW relies upon for its argument that spoliation occurred, because the case cited to in its analysis, *Scott v. Moniz*, 2015 WL 3823705 at *3 (W.D.Wash. 2015), J. Bryan, falls squarely under a line of cases that assume an email is <u>lost</u> or otherwise unrecoverable. *See, e.g., Moore v. Lowe's Home Centers, LLC*, 2:14-cv-01459-RJB, 2016 WL 3458353. Fed. R. Civ. P. 37(e), which governs the failure to preserve electronically stored information (ESI), applies to situations where ESI "should have been preserved in the anticipation or conduct of litigation [but] is <u>lost</u> . . . and it <u>cannot be restored or replaced</u>[.]" Other cases have defined spoliation consistent with Fed. R. Civ. P. 37(e). *See, e.g., Apple Inc. v. Samsung Electronic Co., Ltd.,* 888 F.Supp.2d 976, 989 (N.D Cal.2012) ("*Apple II* ") ("destroys or alters material evidence or fails to preserve" potential evidence). *See also* 2015 Cmt to Fed. R. Civ. P. 37(e) (the rule "applies only when such information is lost"). This Court is aware of no authority defining "spoliation" broadly, as TSI-JJW uses the term, to refer to unintentional

ORDER ON DEFENDANTS TRANS-SYSTEM,
INC. D/B/A JAMES J. WILLIAMS BULK
SERVICE TRANSPORT'S MOTION FOR
SPOLIATION SANCTIONS- 5

withholding of ESI later recovered. Because the ESI at issue, the September 27, 2012, 3:17pm email, was later recovered, Spoliation did not occur. Awarding sanctions for spoliation is without justification. Were the Court to narrowly construe TSI-JJW's motion, it should be denied under Fed. R. Civ. P. 37(e) on these grounds alone.

Perhaps conceding the problem of initially framing its motion as a request for "spoliation sanctions," TSI-JJW argues in its Reply that Cosmo possessed but did not produce the email, and that "the same rationales [for] sanctions that apply to parties who destroy evidence apply to parties who withhold evidence." Dkt. 96 at 7, citing to *Loops LLC v. Phoenix Trading, Inc.*, 2010 WL 11442905 (W.D.Wash. 2010). *Loops* is not binding authority, and it was not decided after changes were made to Fed. R. Civ. P. 37(e) in 2015. *See* 2015 Cmt to Fed. R. Civ. P. 37(e) ("New Rule 37(e) . . . forecloses reliance on inherent authority or state law"). Notwithstanding the fact that Fed. R. Civ. P. 37(e) may limit the Court's otherwise broad authority to govern discovery, the Court analyzes Cosmo's request for sanctions under the assumption that its inherent powers to control discovery do, in fact, apply.

**B. Are sanctions justified?**

Although the issue of whether spoliation occurred has been resolved (it did not), the Court will analyze, in the alternative, whether the circumstances justify sanctions.

Much of TSI-JJW's argument focuses on Cosmo's culpability. According to TSI-JJW, Cosmo possessed the September 27, 2012, 3:17pm email, yet intentionally withheld it. TSI-JJW opines that Cosmo unilaterally limited discovery without notice to TSI-JJW by limiting ESI discovery to specific search terms, rather than searching every available folder, such as archived user profiles. Dkt. 82 at 10; Dkt. 96 at 2-5. TSI-JJW also argues that it has suffered severe

prejudice, because of the email's importance—which "cannot be over-emphasized"—to discovery and the outcome of TSI-JJW's motion for summary judgment. Dkt. 82 at 10, 11.

Regarding Cosmo's culpability, Cosmo defends its discovery conduct by arguing that Cosmo's failure to produce the September 27, 2012, 3:17pm email was not intentional and followed good faith, reasonable efforts to produce relevant discovery. Dkt. 87 at 12. Regarding prejudice to TSI-JJW, Cosmo concedes that the email is discoverable but argues that TSI-JJW was not prejudiced, as shown by TSI-JJW's reliance at depositions on other evidence with significant overlap. For example, Cosmo highlights, when deposing Weyerhaeuser employees, Ms. Temen and Ms. Johnson, TSI-JJW relied upon the Weyerhaeuser Investigation Report, which refers to a communication between Ms. Temen and Cosmo at "approximately 3:15." *Id*. at 7-9.

The circumstances do not warrant sanctions. Considering Cosmo's culpability in withholding the September 27, 2012, 3:17pm email, the weight of the record favors Cosmo, not TSI-JJW. The facts do not show bad faith or an intent to withhold the email. Importantly, Plaintiffs were in possession of other discovery, such as the Weyerhaeuser Investigation Report, that confirmed a 3pm or later timeframe. The evidence shows that, on an ongoing basis, Cosmo produced discoverable emails that referred to correspondence between Cosmo and Weyerhaeuser, including those found in a subsequent search of Ms. Parson's corrupted hard drive. Further, Weyerhaeuser also did not produce the same email when responding to Cosmo's third party subpoena, because if it had done so, Cosmo would have been aware of the email's existence and would been obliged to produce it. This evidence supports the conclusion that Cosmo was not aware of the email in question.

ORDER ON DEFENDANTS TRANS-SYSTEM,
INC. D/B/A JAMES J. WILLIAMS BULK
SERVICE TRANSPORT'S MOTION FOR
SPOLIATION SANCTIONS- 7

At worst, Cosmo reneged on its discovery obligations when it limited its discovery search to specific terms without notifying Plaintiffs, but it is not clear that broadening terms would have resulted in a "hit." Plaintiffs have not suggested which terms Cosmo should have used, nor is it apparent which terms would have resulted in a "hit," given the email's general nature. *See* Dkt. 83-1 at 23. Further, if Cosmo had not used search terms, given the difficulty of Cosmo's IT Manager in finding the email, which was found in a non-intuitive, obscure location, it is unclear whether diligent, reasonable discovery efforts would have uncovered its existence.

More fatal to TSI-JJW's motion, however, is TSI-JJW's meager showing of prejudice, both as to TSI-JJW's ability to conduct discovery and to the resolution of its prior motion for summary judgment. TSI-JJW conducted at least two depositions where TSI-JJW directly inquired about communications from Weyerhaeuser to Cosmo "at approximately 3:15," and TSI-JJW has made no showing as to what specific questions would be asked of witnesses that could not, given the delayed receipt of the email. Next, the delayed receipt of the email does not change the outcome of TSI-JJW's prior motion, because other evidence independent of the email, such as the Weyerhaeuser Investigation Report and declaration of Mr. Crow, created an issue of material fact about the timing of the exposure incident.

In sum, sanctions are not justified.

**C. Which sanction would be appropriate?**

TSI-JJW argues that "severe sanctions" are the appropriate remedy. Dkt. 96 at 2. TSI-JJW requests that the Court either (1) grant TSI-JJW's prior motion for summary judgment of dismissal; (2) preclude Cosmo from disputing the timing of Mr. Crow's exposure, e.g., by means of a jury instruction; or (3) allow TSI-JJW to reopen discovery, to wit, depositions of Ms. Parsons, Arne Peterson, and a 30(b)(6) witness, and the search of employee hard drives, followed

by a hearing to determine whether sanctions (1) or (2) above are warranted. Dkt. 82 at 2, 3, 11-13.

Because sanctions are not justified, the Court need not address the issue of which sanction would be appropriate.

**D. Conclusion.**

TSI-JJW possesses the September 27, 2012, 3:17pm email. Rather than litigating discovery minutiae, the proper way forward is for the parties to submit the fact issues to the trier of fact. TSI-JJW's motion should be denied.

* * *

THEREFORE, TSI-JJW's Motion for Spoliation Sanctions (Dkt. 82) is hereby DENIED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 24th day of March, 2017.

	*[signature]*
	ROBERT J. BRYAN
	United States District Judge

ORDER ON DEFENDANTS TRANS-SYSTEM, INC. D/B/A JAMES J. WILLIAMS BULK SERVICE TRANSPORT'S MOTION FOR SPOLIATION SANCTIONS- 9